IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ÁNGEL M. DÍAZ-ORTIZ, et al.,

Plaintiffs

v.                                                     CIVIL 07-1390 (GAG) (JA)

JOSÉ M. DÍAZ-RIVERA, et al.,

Defendants

OPINION AND ORDER

        Pending before me is the motion for summary judgment of defendants
José M. Díaz-Rivera, Heriberto Rodríguez-Adorno, and the Municipality of Morovis.
(Docket No. 26.)  The motion was filed on October 26, 2008 and seeks dismissal
of various political discrimination claims advanced by plaintiffs Ángel M. Diaz-Ortiz,
Georgina Allomes-Ramos, and the conjugal partnership between them.  Plaintiffs
moved to strike defendants' motion on November 14, 2008.  (Docket No. 38.)  I
denied that motion on December 29, 2008 (Docket No. 45) and plaintiffs filed an
opposition to the motion for summary judgment on March 13, 2009.  (Docket No.
51.)  Defendants submitted a reply brief[1] on March 24, 2009.  (Docket No. 55.)

---

        [1] Defendants' reply brief was 15 pages long and thus exceeded by 5 pages
the 10 page minimum for such memoranda provided by the Local Rules.  Local
Rule 7.1(e).  Local Rule 7.1(e) is "unambiguously clear."  Ortiz v. Hyatt Regency
Cerromar Beach Hotel, Inc., 422 F. Supp. 2d 336, 339 (D.P.R. 2006).  I am within
my rights to strike plaintiff's violative pleadings.  Id.  Rules are written to be
followed.  Counsel should be aware that judges generally follow them and disfavor
ignoring them.

CIVIL NO. 07-1390 (GAG) (JA)          2

I.      PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff Díaz-Ortiz filed this action on May 8, 2007, accusing defendants of political discrimination and of violating his rights under the First Amendment to the United States Constitution and Articles 1802 and 1803 of the Puerto Rico Civil Code, Puerto Rico Laws Annotated title 31, sections 5141-5142.  He also claims a right to recover under the Puerto Rico Constitution and under the Fifth, Ninth, Tenth, and Fourteenth Amendments to the United States Constitution.  He claims that this Court has jurisdiction over his claims pursuant to 28 U.S.C. §§ 1331 and 1343, in that his claims arise under the Civil Rights Act of 1871, 42 U.S.C. § 1983 *et seq.*, and the United States Constitution.

Díaz-Ortiz, a member of Puerto Rico's Popular Democratic Party ("PDP") (Docket No. 1, at 2, ¶ 3.1) began working for the Municipality of Morovis on February 16, 2001.  (Docket No. 1, at 4, ¶ 4.2; Docket No. 26-3, at 2, ¶ 3.)  An employment form bearing his signature indicated that his title was "Worker II" and that his position was "transitory."  (Docket No. 34-3; Docket No. 26-3, at 2, ¶ 3.)  His employment term was extended nine times on a "transitory" basis and twice on an "irregular" basis between July 2001 and November 2002.  (Docket No. 34-4.)  On January 1, 2003, Díaz-Ortiz was appointed to the position of Certified Electrician.  (Docket No. 26-3, at 2, ¶ 6.)  In this capacity he was responsible for installing and maintaining equipment and electrical fixtures within the public

CIVIL NO. 07-1390 (GAG) (JA)                3

buildings of the Municipality of Morovis.  (Docket No. 1, at 4, ¶ 4.2; Docket No. 51-2, at 4, ¶ 10.)  Díaz-Ortiz asserts that he never formulated or influenced public policy in any way pursuant to his job duties, and defendants do not contend otherwise.  (Docket No. 1, at 4, ¶ 4.2; Docket No. 26-3.)  His appointment as Certified Electrician was extended multiple times on a transitory basis  through May 2006.   (Docket Nos. 34-5 and 34-6.)   Díaz-Ortiz was aware that his appointment was transitory.  (Docket No. 26-3, at 2, ¶ 9; Docket No. 51-7, at 5, ¶ 9.)

On November 2, 2004, general elections were held in Puerto Rico.  (Docket No. 26-3, at 1, ¶ 1.)  The elections included the race for mayor in the Municipality of Morovis, whose population is less than thirty thousand residents.  (Docket No. 51-2, at 2, ¶ 2-3.)  The incumbent mayor of Morovis, who was affiliated with the PDP, lost that city's mayoral election to defendant Heriberto Rodríguez-Adorno of the New Progressive Party ("NPP").  (Docket No. 26-3, at 1, ¶ 1.)  Rodríguez-Adorno took office on January 10, 2005.  (Id.)  Rodríguez-Adorno appointed defendant José Díaz-Rivera, an active member of the NPP, to the office of Director of the Department of Public Works in Morovis.  (Docket No. 51-2, at 3, ¶ 6; Docket No. 1, at 3, ¶ 3.3.)

Shortly after the election, Díaz-Ortiz sustained a work-related injury.  (Docket No. 51-2, at 5, ¶ 15.)  He returned to work in April 2005, at which time

CIVIL NO. 07-1390 (GAG) (JA)          4

his direct supervisor was Díaz-Rivera.  (Id.)  He asserts that his duties were occasionally assigned to other active NPP party members while he would be relegated to duties unrelated to his position as Certified Electrician, such as cleaning street gutters and performing miscellaneous construction work.  (Id. at 6, ¶ 17.)  Defendants' explanation for this is that there were occasions where there was no work requiring Díaz-Ortiz' attention, causing his supervisors to give him the option of taking the day off or joining other municipality employees in performing their tasks.  (Docket No. 55-2, at 3, ¶ 17.)  By May 2006, the last month of Diaz-Ortiz' employment, Mr. José Vega had replaced Díaz-Rivera as Díaz-Ortiz' supervisor.  (Docket No. 26-3, at 4, ¶ 22.)

At some time in 2005 or 2006, a secret electrical line connected to the Town Hall building was discovered, and the apparently illegal line received local media coverage.  (Docket No. 51-2, at 6, ¶¶ 18 & 21; Docket No. 55-2, at 3, ¶ 18.)  Pursuant to an investigation of the electrical line, the police interviewed Díaz-Ortiz, who stated to the police that the line was installed subsequent to Rodríguez-Adorno's taking office.  (Docket No. 55-2, at 3-4, ¶ 20.)  Defendants, to the contrary, contend that the line was in place before that time.  (Docket No. 51-2, at 6, ¶ 20; Docket No. 55-2, at 4, ¶ 20.)  In any event, shortly after the issue became public and Díaz-Ortiz was questioned, Díaz-Ortiz was informed his employment would not be renewed.  (Docket No. 51-2, at 7, ¶ 22.)

CIVIL NO. 07-1390 (GAG) (JA)              5

In a letter dated May 10, 2006, Rodríguez-Adorno informed Díaz-Ortiz that his appointment would not be renewed after May 31, 2006, the date his existing transitory appointment was to conclude.  (Docket No. 34-2; Docket No. 34-6, at 17.)  The letter cited a "fiscal crisis" as a reason for this non-renewal.  (Docket No. 34-2.)  Indeed, defendants assert that the municipality's income from its Municipal Tax Collection Center was eliminated in this crisis, and that the central government was forced to shut down.  (Docket No. 26-3, at 4, ¶ 25.)  Díaz-Ortiz, however, objects to the court's recognition of these claims by defendant, and in any event asserts that the decision not to renew his contract was politically motivated.  (Docket No. 51-7, at 9, ¶ 24; Docket No. 1, at 8, ¶ 5.3.)

The parties dispute whether Díaz-Ortiz was a "well-known" PDP activist in Morovis.  (Docket No. 51-2, at 4, ¶ 11; Docket No. 55-2, at 2, ¶ 11.)  It is not disputed, however, that at some point Díaz-Ortiz held the position of president of the PDP local action committee of the Barrio Perchas ward within Morovis. (Docket No. 51-2, at 4, ¶ 12.)  In 2000 and again in 2004, he was the vice-president of that action committee.  (Id.)  He actively participated in PDP rallies, meetings, caravans, house calls with PDP candidates, and "campaign closing activities."  (Id.)  Díaz-Rivera was aware of Díaz-Ortiz' political affiliation, as the two men were neighbors who used to discuss politics, and as Díaz-Rivera was

CIVIL NO. 07-1390 (GAG) (JA)            6

president of the local NPP action committee at the same time Díaz-Ortiz was vice president of the PDP action committee.  (Id. ¶¶ 8, 9 & 13.)

Díaz-Ortiz asserts that Rodríguez-Adorno also knew that he was an active PDP supporter because Díaz-Rivera knew as much, and because Rodríguez-Adorno allegedly refused to visit Díaz-Ortiz' home while campaigning.  (Docket No. 51-2, at 4-5, ¶ 13.)  Díaz-Ortiz cites Rodríguez-Adorno's deposition testimony that, "there are always people in the neighborhoods who know what political affiliation is each . . . each person." (Docket No. 51-3, at 10:1-3.)  Defendants deny, however, that Rodríguez-Adorno had any such knowledge or that he intentionally avoided visiting Díaz-Ortiz' home for political reasons.  (Docket No. 55-2, at 2, ¶ 13.)  In support of their stance, defendants point to the following undisputed facts:  that Díaz-Ortiz and Rodríguez-Adorno never had a conversation; that the two never discussed politics; that Díaz-Ortiz never heard, saw, or knew of Díaz-Rivera or anybody else talking to Rodríguez-Adorno about him or his political affiliation; that Díaz-Ortiz never heard of nor knew of either defendant making any comment regarding him or his political affiliation; and that Díaz-Ortiz never heard any comment from any third party that was related to himself, Rodríguez-Adorno, and/or politics.  (Id.; Docket No. 26-3, at 3, ¶¶ 15-17, at 4, ¶¶ 18-21.)  Díaz-Ortiz' deposition testimony on this subject reads as follows:

> Q:   . . . I had asked you before if you had ever heard
>       Heriberto Rodríguez-Adorno or José Díaz talk about

CIVIL NO. 07-1390 (GAG) (JA)            7

> you or anyone talk to them about you?  Did you
> ever hear anyone, a third person comment that he
> had heard something or had seen something that
> had something to do with Heriberto Rodríguez and
> you or politics?

> A:     Never.

(Docket No. 34-7, at 10:20-22, at 11:1-4.)   Regarding the contention that

Rodríguez-Adorno avoided his home while campaigning, Díaz-Ortiz' testimony was

the following:

> A:     [W]hat happens is that the president of my
> neighborhood was Mr. José Manueal [sic] Díaz and
> José Manuel Díaz was my neighbor and he told him
> [Rodríguez-Adorno] do not go in there, they are
> "populares" in there, Manolo [presumably referring
> to the plaintiff] lives there who works in the
> Municipality and that is the reason why I believe
> that . . . [ellipses in original]

> Q:     You tell me you understand that he told him.

> A:     I understand, yea, I understand.

> Q:     Did you ever hear anything like that?

> A:     No, no, but . . . [ellipses in original]

> Q:     What you know, remember what I told you before.
> I want you to answer what you know, what you
> heard, what you saw.

> . . .

> A:     But categorically I cannot tell you because I no not
> know [sic] Mr. Díaz's thoughts.

(Docket No. 34-7, at 6:21-22, at 7:1-21.)

CIVIL NO. 07-1390 (GAG) (JA)          8

Defendants point out that, according to a document ostensibly from the Municipality's Office of Human Resources titled "Employees of the Department of Public Works," of the 15 employees listed as transitory Department of Public Works employees, 13 were terminated between May and June of 2006, and the majority were terminated the same day as Díaz-Ortiz.  (Docket No. 34-10.)  Díaz-Ortiz correctly points out that his own name and position are conspicuously absent from this document and therefore questions its validity, but he does not deny the truth of the matter asserted.  (Docket No. 51-7, at 9-10, ¶ 26.)  Defendants also note that, in a letter dated May 26, 2006, the Municipality of Morovis offered Díaz-Ortiz an appointment during the month of June 2006 as a "Worker I" "at a rate of six hours and a salary of $5.15 an hour."  (Docket No. 34-9, at 1, ¶ 2.)  It appears that Díaz-Ortiz did not accept the offer.  (Docket No. 26-2, at 15, ¶ 49.)

II.     SUMMARY JUDGMENT STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  It is therefore the moving party's burden to show "an absence of evidence to support the nonmoving party's case."  Napier v. F/V Deesie, Inc., 454 F.3d 61, 66 (1st Cir. 2006) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).  "A genuine issue exists when, based on the evidence,

CIVIL NO. 07-1390 (GAG) (JA)          9

a reasonable jury could resolve the issue in favor of the non-moving party." Napier v. F/V Deesie, Inc., 454 F.3d at 66 (citing Fajardo Shopping Ctr., S.E. v. Sun Alliance Ins. Co. of P.R., 167 F.3d 1, 7 (1st Cir. 1999)).  "Further, a fact is material if it has the 'potential to affect the outcome of the suit.'"  Id. (quoting Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000)).  "On review of a motion for summary judgment, we take the facts in the light most favorable to the non-moving party. . . ."  CMI Capital Mkt. Inv., LLC v. González-Toro, 520 F.3d 58, 61 (1st Cir. 2008) (citing Cash v. Cycle Craft Co., 508 F.3d 680, 682 (1st Cir. 2007)).  "[T]he role of the court at the summary judgment stage is to 'examine[ ] the entire record "in the light most flattering to the nonmovant and indulge all reasonable inferences in that party's favor."'" Napier v. F/V Deesie, Inc., 454 F.3d at 66 (quoting Cadle Co. v. Hayes, 116 F.3d 957, 959 (1st Cir. 1997)).

III.    DISCUSSION

        Díaz-Ortiz asserts that he was deprived of his constitutionally protected rights to due process and free speech, and that he was the victim of political discrimination.  Defendants counter that Díaz-Ortiz had no property interest in his employment, that he has set forth no evidence of discrimination, that defendants' actions were strictly fiscally motivated, and that any claims arising out of the time period prior to Díaz-Ortiz' termination are time barred.  For the reasons set forth

CIVIL NO. 07-1390 (GAG) (JA)          10

below, I find that Díaz-Ortiz has failed to set forth a triable issue of fact, and that the defendants are entitled to judgment as a matter of law.

    A.    Statute of Limitations

    Díaz-Ortiz filed his complaint on May 8, 2007, and defendants contend that any claims pertaining to the time period more than one year prior to that date are time barred.   In raising this argument defendants are referring to Díaz-Ortiz' allegations that he was relegated to menial tasks not congruent with his qualifications while NPP-affiliated employees were given duties that should have been his.  Díaz-Ortiz does not dispute that these alleged actions occurred prior to May 8, 2006.   "[I]n section 1983 actions, the most appropriate [statute of limitations] provision is the statute of limitations for personal injury cases." Rivera-Torres v. Ortiz-Vélez, 306 F. Supp. 2d 76, 82 (D.P.R. 2002).   "In Puerto Rico, a one-year statute of limitations governs personal injury actions."   Id. Accordingly, I "apply a one-year prescriptive period to" Díaz-Ortiz' claims.   Id.

    Díaz-Ortiz urges an application of the continuing violation doctrine, which "creates an equitable exception to the statute of limitations when unlawful behavior is alleged to be ongoing." Id. at 84 (citing Provencher v. CVS Pharmacy, 145 F.3d 5, 13 (1st Cir. 1998)).   "In effect, the continuing violation theory allows a plaintiff to prosecute claims that would otherwise be time-barred." Rivera-Torres v. Ortiz-Vélez, 306 F. Supp. 2d at 84.   The doctrine applies to cases

CIVIL NO. 07-1390 (GAG) (JA)          11

involving claims under section 1983.  Id. (citing Muñiz-Cabrero v. Ruiz, 23 F.3d 607, 610 (1st Cir. 1994)).  The doctrine, however, "is generally thought to be inapposite when an injury is definite, readily discoverable, and accessible in the sense that nothing impedes the injured party from seeking to redress it."  Id. (quoting Dziura v. United States, 168 F.3d 581, 583 (1st Cir. 1999)).  "Discrete acts of discrimination that occurred outside the statute of limitations period are not actionable, even if they are substantially related to the timely act."  Rivera-Torres v. Ortiz-Vélez, 306 F. Supp. 2d at 84 (citing Nat'l R.R. Passenger Corp. v. Morgan., 536 U.S. 101, 114 (2002)).

Just as in this case, the plaintiff in Rivera-Torres v. Ortiz-Vélez alleged he was discriminatorily deprived of his duties.  Rivera-Torres v. Ortiz-Vélez, 306 F. Supp. 2d at 84.  There, the court held that "Plaintiff's alleged deprivation of duties . . . [is] discrete in nature," and that it is "not actionable under the continuing violation theory."  Id.  As the claim in question here is also one of deprivation of duties, the holding of Rivera-Torres v. Ortiz-Vélez is controlling.  (Docket No. 1, at 5, ¶ 4.6.)  Díaz-Ortiz' alleged injury was definite, and nothing impeded him from discovering it.  Accordingly, this particular claim by Díaz-Ortiz is discrete in nature and is time-barred.

B.     Political Discrimination

1.     Adverse Actions Short of Dismissal

CIVIL NO. 07-1390 (GAG) (JA)          12

Even if Díaz-Ortiz' claims pertaining to adverse actions other than his dismissal were not time barred, they would fail on their merits.  "[A]dverse actions short of dismissal or demotion, such as denials of promotions, transfers and rehires, can constitute actionable adverse employment decisions."  Welch v. Ciampa, 542 F.3d 927, 936 (1st Cir. 2008) (citing Rutan v. Republican Party of Ill., 497 U.S. 62, 75 (1990)).  "Actions of informal harassment, as opposed to formal employment actions like transfers or demotions, can be the basis for first amendment claims *if the motive was political discrimination*; but this is so only if the discriminatory acts are "*sufficiently severe* to cause reasonably hardy individuals to compromise their political beliefs and associations in favor of the prevailing party."  Martínez-Vélez v. Rey-Hernández, 506 F.3d 32, 42 (1st Cir. 2007) (quoting Agosto-de-Feliciano v. Aponte-Roque, 889 F.2d 1209, 1217 (1st Cir. 1989)) (emphasis added); see Welch v. Ciampa, 542 F.3d at 937 (Plaintiff employee failed to establish a claim for political harassment where supervisors changed locks to his detective office, made him complete "daily activity sheets," and subjected him to "stare downs.").  It will be demonstrated below that Díaz-Ortiz failed to establish that defendants were motivated by political discrimination, but for purposes of the rule in Martínez-Vélez v. Rey-Hernández, it is sufficient to conclude here that being occasionally placed on gutter clean-up duty falls below

CIVIL NO. 07-1390 (GAG) (JA)          13

the "sufficiently severe" standard, and is less oppressive than the treatment experienced by the plaintiff in Welch v. Ciampa.

    2.    Non-renewal of Employment

    The Elrod-Branti doctrine provides that "non-policymaking public employees are protected from adverse employment decisions based on their political affiliation." Padilla-García v. Rodríguez, 212 F.3d 69, 74 (1st Cir. 2000) (citing Elrod v. Burns, 427 U.S. 347, 354 (1976); Branti v. Finkel, 445 U.S. 507, 516 (1980); Rutan v. Republican Party, 497 U.S. at 75).  "It is settled law that the Elrod-Branti doctrine extends to a politically motivated non-renewal of a term of employment, regardless of the transitory nature of the position." Padilla-García v. Rodríguez, 212 F.3d at 75 n.3 (citing Nieves-Villanueva v. Soto-Rivera, 133 F.3d 92, 94 n.3, 98 (1st Cir. 1997)).  In order to prevail on a claim of political discrimination, "a plaintiff must show that he engaged in constitutionally protected conduct and that this conduct was a substantial or motivating factor in the alleged adverse employment action." Welch v. Ciampa, 542 F.3d at 936 (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).  "The proper standard under Mt. Healthy City School District Board of Education v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), is whether the protected conduct constitutes a factor in the adverse employment decision." Padilla-García v. Rodríguez, 212 F.3d at 73 (emphasis in original).  This analysis

CIVIL NO. 07-1390 (GAG) (JA)          14

applies to both political discrimination and free speech claims.[2]  Welch v. Ciampa,

542 F.3d at 936.  Should a plaintiff satisfy her prima facie burden, "the defendant

can prevail if it can establish that it would have taken the same action regardless

of the plaintiff's political beliefs or protected conduct." Welch v. Ciampa, 542 F.3d

at 936 (citing Padilla-García v. Rodríguez, 212 F.3d at 74); Mt. Healthy City Sch.

Dist. Bd. of Educ. v. Doyle, 429 U.S. at 287.

This is not the first time that this court has heard allegations of political

discrimination relating to employment terminations in the wake of Rodríguez-

Adorno's taking office as the mayor of the Municipality of Morovis in 2005.  In an

Opinion and Order dated March 9, 2009, Judge Delgado-Colón of this district

adopted my report and recommendation and granted summary judgment in favor

of the Municipality of Morovis, Rodríguez-Adorno, and various unnamed

defendants against multiple plaintiffs who lost their jobs in the early stages of

---

[2] Díaz-Ortiz makes one vague allusion to his free speech rights in his complaint, and fails to even mention such rights in his opposition to motion for summary judgment.  (Docket No. 1, at 7, ¶ 5.2; Docket No. 51.)  He also points out the fact that he was notified of the non-renewal of his employment shortly after speaking to investigators about the secret power line discovered at the Town Hall.  (Docket No. 51-2, at 7, ¶ 22.)  He does nothing to develop an argument from these facts, but a charitable reading of his pleadings might infer an argument that his free speech rights as a public employee were violated in that he was punished for speaking on a matter of public concern.  To the extent this is his argument, it is a losing one, as public employees speaking on matters of public concern are not protected when those matters are within the scope of their employment duties. Garcetti v. Ceballos, 547 U.S. 410, 421 (2006).  Díaz-Ortiz, a Certified Electrician for the Municipality, was not insulated when speaking on matters of Town Hall electricity.

CIVIL NO. 07-1390 (GAG) (JA)          15

Rodríguez-Adorno's administration.   Negrón-Jiménez v. Rodríguez-Adorno, No. 06-1055 (ADC), 2009 WL 605365 (D.P.R. Mar. 9, 2009).[3]  In that case, plaintiffs relied heavily on the same argument upon which Díaz-Ortiz relies.  There, "none of the plaintiffs, except [a specified few] offer[ed] evidence that Rodríguez-Adorno had first-hand knowledge of their affiliations with the P.D.P."  Id. at *2.  Rather, they offered evidence that he "must have known" because of the very same deposition testimony cited by Díaz-Ortiz here:  that "there are always people in the neighborhoods who know what political affiliation is each . . . person."  Id. at *2.  The court held the following:

> [P]laintiffs are obligated to point to "to evidence on the record which, if credited, could permit a rational fact finder to conclude that the challenged personnel action occurred and stemmed from a politically based discriminatory animus."  LaRou v. Ridlon, 98 F.3d 659, 661 (1st Cir. 1996) (quoting Rivera-Cotto v. Rivera, 38 F.3d 611, 614 (1st Cir. 1994)); see also Cruz-Báez v. Negrón-Irizarry, 360 F.Supp.2d 326 (D.P.R. 2005). Consequently, even when circumstantial evidence may be sufficient to support a finding of political discrimination, plaintiffs must still make a fact-specific showing that a causal connection exists between the adverse employment action and their political affiliation. See Avilés-Martínez v. Monroig, 963 F.2d 2, 5 (1st Cir. 1992).

Negrón-Jiménez v. Rodríguez-Adorno, 2009 WL 605365, at *11.

_____

   [3] It is not my custom to cite to unpublished opinions, but as Negrón-Jiménez v. Rodríguez-Adorno involves facts so nearly identical to those at bar, and because its reasoning and holding are sound, I depart from common practice.

CIVIL NO. 07-1390 (GAG) (JA)          16

    In showing the existence of a causal connection,
the court has established that a plaintiff cannot prove
that a defendant had knowledge of his political affiliation
merely through:

> testimony of having been seen, or, for that matter,
> met during routine campaign activity participation,
> having been visited by the now incumbent
> defendant while said defendant was a candidate to
> the position he now holds, by having held a
> trust/confidential/policymaking position in the
> outgoing administration, by having political
> propaganda adhered to plaintiff's car and/or house,
> *or through the knowledge of third parties*.

Román v. Delgado Altieri, 390 F.Supp.2d 94, 102-03
(D.P.R. 2005) . . . .

    Here, this is exactly the type of insufficient
evidence upon which all of the plaintiffs, except for [a
specified few] rely. *First, thirteen (13) of the eighteen
(18) primary plaintiffs state that Rodríguez-Adorno is, or
was, aware of their political affiliations because he knows
a third party whom is aware of their affiliations to the
P.D.P. . . . .*  Third, plaintiffs point out that they have
been seen at P.D.P. campaign functions by N.P.P.
activists. . . . *See generally* González-Pina, 407 F.3d at
432 (holding that, even if the opposing party mayor was
aware of plaintiff's support for a rival mayoral candidate
in the primary, that, by itself, is insufficient to establish
political animus); González- De-Blasini, 377 F.3d at
85-86 (affirming the dismissal of a complaint because
even though plaintiff was alleged to be a well known
supporter of the N.P.P., had held a
trust/confidential/policymaking position under the
previous N.P.P. administration, and defendant had
expressed interest in giving her position to a P.D.P
member, this fell short of evidence that defendant knew
of plaintiff's political affiliation); Padilla-García v.
Guillermo Rodríguez, 212 F.3d 69, 74 (1st Cir. 2000) (a

CIVIL NO. 07-1390 (GAG) (JA)          17

showing of political animus "requires more than merely 'juxtaposing a protected characteristic-someone else's politics-with the fact that plaintiff was treated unfairly' ") (citation omitted); <u>Cosme-Rosado</u>, 360 F.3d at 48 (holding that the statement of P.D.P major of intent to rid town of N.P.P. activists was, by itself, insufficient to generate genuine issues of material fact).

<u>Id.</u> at 12 (emphasis added).

Additionally, plaintiffs' characterization of Rodríguez-Adorno's testimony as an "admission" as to his "reliance upon 'his people' (political machinery), in each 'barrio' to let him know the political affiliation of each individual" is a mis-characterization of Rodríguez-Adorno's deposition testimony. In his deposition, Rodríguez-Adorno stated that "there are always people in the neighborhoods who know what political affiliation is each . . . person." While the court "must scrutinize the evidence . . . giving [plaintiffs] the benefit of any and all reasonable inferences," *to turn this statement into an admission that he, himself, relied on these people to inform him of the plaintiffs' political affiliations would not only be far-fetched but would be an improbable inference, to which plaintiffs are not entitled.* *See, e.g.*, <u>Suárez v. Pueblo Int'l, Inc.</u>, 229 F.3d 49, 53 (1st Cir. 2000).

Therefore, the court adopts the R & R, insofar as it recommends dismissal of all of plaintiffs' claims of political discrimination for failure to make out a prima facie case, except those asserted by [a specified few plaintiffs], who proffered evidence that Rodríguez-Adorno was aware of their respective political affiliations.

<u>Id.</u> at 13 (some internal citations omitted ) (emphasis added).  The facts and reasoning of <u>Negrón-Jiménez v. Rodríguez-Adorno</u> are directly on-point with this case, and its holding is equally applicable.  Díaz-Ortiz advances no evidence that

CIVIL NO. 07-1390 (GAG) (JA)          18

Rodríguez-Adorno had first-hand knowledge of his political affiliation.  He relies in part on Díaz-Rivera's third-party knowledge, which, as shown above, is insufficient to implicate Rodríguez-Adorno.  He also relies on mere speculation that Rodríguez-Adorno deliberately avoided his home when campaigning because of their political differences, and provides neither direct nor circumstantial evidence to support such a theory.

As to Díaz-Rivera, Díaz-Ortiz admittedly never heard a single comment from him regarding Díaz-Ortiz' political affiliation, nor does Díaz-Ortiz have any knowledge of any such comment.  (Docket No. 26-3, at 4, ¶ 20.)  There is no evidence that Díaz-Rivera had any power to terminate Díaz-Ortiz; it was Rodríguez-Adorno's signature that appeared on the notice of non-renewal of Díaz-Ortiz' employment.  Finally, Díaz-Rivera was not even Díaz-Ortiz' supervisor by the time Díaz-Ortiz was notified that his employment would not be renewed.  (Docket No. 26-3, at 4, ¶ 22.)  See Welch v. Ciampa, 542 F.3d at 936 (finding police chief who was suspended at the time of plaintiff's demotion could not be liable for adverse employment action, as suspension stripped chief of the authority to take such an action).  Accordingly, Díaz-Ortiz has failed to establish a prima facie case for political discrimination.  As such, an inquiry under Mt. Healthy into whether defendants would have dismissed Díaz-Ortiz regardless of his political

CIVIL NO. 07-1390 (GAG) (JA)          19

beliefs is unnecessary.  Thus, summary judgment is proper as to Díaz-Ortiz'

political discrimination claims.

C.    Due Process Claim

Díaz-Ortiz also advances claims under the Fifth[4] and Fourteenth

Amendments to the United States Constitution.  It is a longstanding principle of

constitutional law that a state cannot discharge a public employee who possesses

a property interest in continued employment without due process of law.

Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1985).

> Under ordinary circumstances, an at-will employee lacks
> a reasonable expectation of continued employment (and,
> thus, has no property interest in her job).  King v. Town
> of Hanover, 116 F.3d 965, 969 (1st Cir. 1997).  This is
> true of so-called transitory public employees in Puerto
> Rico.  See, e.g., Nieves-Villanueva v. Soto-Rivera, 133
> F.3d 92, 94 (1st Cir. 1997) (explaining that 'transitory
> employees generally do not have a property interest in
> continued employment beyond their yearly terms of

_____

[4] As to the Fifth Amendment claim, I adopt the conclusion of the court in
Negrón-Jiménez, *mutatis mutandis*:

[P]laintiffs cannot bring a Fifth Amendment claim against defendants
since the Fifth Amendment applies only to claims asserted against the
federal government, not against private individuals, or states.  Gerena
v. P.R. Legal Serv. Inc., 697 F.2d 447, 449 (1st Cir. 1983) (citing
Pub. Util. Commi'n v. Pollak, 343 U.S. 451, 461 (1952)).  Since
plaintiffs' claims are alleged against defendants in their personal
capacities and as agents of the Municipality, such a claim is
inappropriate.  Therefore, plaintiffs' Fifth Amendment claim is
DISMISSED WITH PREJUDICE.

Negrón-Jiménez v. Rodríguez-Adorno, 2009 WL 605365, at *1 n.2.

CIVIL NO. 07-1390 (GAG) (JA)          20

appointment'); <u>Caro v. Aponte-Roque</u>, 878 F.2d 1, 4 (1st Cir. 1989) (similar).

<u>Gómez v. Rivera Rodríguez</u>, 344 F.3d 103, 111 (1st Cir. 2003).  Here, Díaz-Ortiz was a transitory employee, and thus had no reasonable expectation of continued employment, and therefore had no property interest in his job.  Accordingly, he is entitled to no constitutional due process protections.

Díaz-Ortiz nonetheless cites Puerto Rico's Law 172 for the proposition that he is in fact endowed with such rights.  <u>Negrón-Jiménez</u> addressed this argument as well:

> In the instant case, plaintiffs assert that they have an expectation of continued employment and that if the Municipality was barred from renewing plaintiffs' contracts, then they were "compelled by Law 172 and Letter 5-2004" to award them permanent positions. A plain reading of both Law 172 and Letter 5-2004 shows that they are insufficient to create an expectation of continued employment. Law 172 provides:

>> Any transitory employee who has held until June 30, 2004, a position of fixed duration with permanent functions in the career service for a period equal to the probation period established for the class of the position he or she is to occupy, provided it is not for a period of less than six (6) months, in agencies covered under the Personnel System created by virtue of Act No. 5 of October 14, 1975, as amended, [former §§ 1301 et seq. of this title], shall acquire, effective on July 1, 2004, the condition of regular career employee in a position equal or similar to the one he or she held transitorily, subject to the conditions described in subsections (a) through (d) of this Section.

CIVIL NO. 07-1390 (GAG) (JA)          21

> (d) The head of the agency shall conduct an evaluation of the employee in a transitory position that complies with the provisions of the first paragraph of the present Section to acquire the condition of regular career employee, and shall certify that the services have been satisfactory. This last determination shall be made considering the evaluations of the employee and any corrective actions, if any, that appear on the record of the employee.  Any transitory employee that has been affected by a determination of the agency regarding the rights granted to him/her by this Act may appeal to the Board of Appeals of the Personnel Administration System, pursuant to the provisions of Section 7.15 of Act No. 5 of October 14, 1975, as amended [former § 1395 of Title 3].

P.R. Laws Ann. tit. 3, § 1461. The statute makes clear that a transitory employee's conversion to a career position was conditional upon, *inter alia*, an appraisal by the Director of the Central Labor Advisory and Human Resources Administration Office and the head of the agency to which the employee belonged, and was to be determined by July 1, 2004.  *Id.*  As such, though plaintiffs are unyielding in their assertion that they had an expectation of continued employment pursuant to Law 172 and Letter 5-2004, a plain reading of the cited language shows that this was dependent upon the Municipalities' determination that said conversions were appropriate.  FN8.  Hence, neither Law 172 nor Letter 5-2004 support any of the plaintiffs' due process claims. Therefore, plaintiffs' assertion that they had an expectation of continued employment in their positions because they should have been converted to career employees is unsupported by the record.

> FN8. Further, even assuming that Law 172 did apply to the co-plaintiffs, it is clear that said determination was to be made prior to June 1, 2004, which was before Rodríguez-Adorno took

CIVIL NO. 07-1390 (GAG) (JA)          22

> office.  While Letter 5-2004 provided an extension until January 10, 2005, since Rodríguez-Adorno was not sworn into office until that same day, he cannot be held liable for not having decided to convert plaintiffs to career employees as he had no opportunity to do so. Hence, plaintiffs' theory that they were entitled to be converted to career appointees fails.

Negrón-Jiménez v. Rodríguez-Adorno, 2009 WL 605365, at *15-16.  Under the logic and controlling sources of law cited in Negrón-Jiménez, I find that Díaz-Ortiz had no property interest in his transitory position, and that he had no rights in this case under the due process clause.

     D.    Ninth and Tenth Amendment Claims

     Díaz-Ortiz' claims under the Ninth and Tenth Amendments to the United States Constitution remain.  The court in Negrón-Jiménez v. Rodríguez-Adorno held:

> Although defendants did not move for summary judgment as to plaintiffs' Ninth and Tenth Amendment claims, the court dismisses these claims as well.  Plaintiffs make no effort, in the complaint or any other pleading, to establish that they are entitled to relief pursuant to either the Ninth or Tenth Amendment.  United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").  Additionally, even if plaintiffs allusion to the Ninth and Tenth Amendments claims were not perfunctory, they could not prevail on the same.  The Ninth Amendment states:  "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people."  U.S. Const. Amend. IX.  The

CIVIL NO. 07-1390 (GAG) (JA)          23

> court of appeals has explicitly stated that the Ninth Amendment "does not create substantive rights beyond those conferred by governing law." <u>Alvarado-Aguilera v. Negrón</u>, 509 F.3d 50, 53 (1st Cir. 2007).  Thus, plaintiffs cannot assert a Ninth Amendment claim.   The Tenth Amendment states:  "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. Amend. X.  The court of appeals has expressly stated that "private citizens lack standing to maintain Tenth Amendment claims."  <u>Medeiros v. Vincent</u>, 431 F.3d 25, 34 (1st Cir. 2005) (citing <u>Tenn. Elec. Power Co. v. Tenn. Valley Auth.</u>, 306 U.S. 118, 144, 59 S.Ct. 366, 83 L.Ed. 543 (1939)).  As plaintiffs are private citizens and allege no claim against a federal actor, their Ninth and Tenth Amendment claims must be DISMISSED.

<u>Negrón-Jiménez v. Rodríguez-Adorno</u>, 2009 WL 605365, at *16.  Under the logic and legal precedent cited in <u>Negrón-Jiménez v. Rodríguez-Adorno</u>, I hereby DISMISS Díaz-Ortiz' Ninth and Tenth Amendment claims.

E.    State Law Claims

Díaz-Ortiz asserts that this court has supplemental jurisdiction over his state law claims because they are so related to his federal claims that the two sets of claims form part of the same case or controversy.  28 U.S.C. § 1367(a).  I may decline to exercise supplemental jurisdiction, however, if all claims over which I have original jurisdiction have been dismissed.   28 U.S.C. § 1367(c)(3). "Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as

CIVIL NO. 07-1390 (GAG) (JA)          24

well." <u>United Mine Workers of Am. v. Gibbs</u>, 383 U.S. 715, 726 (1966).  When it appears "that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." <u>Rivera v. Murphy</u>, 979 F.2d 259, 264-65 (1st Cir. 1992) (quoting <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 (1987)).  As Díaz-Ortiz' federal claims are hereby dismissed, so too must his state law claims.

IV.    CONCLUSION

        Díaz-Ortiz has failed to establish that his political affiliation was a substantial or motivating factor in the Municipality's decision not to renew his transitory appointment.  He thus has no First Amendment claim for political discrimination. Because his appointment was transitory in nature, he held no property interest that might merit due process protection.  Therefore, all federal claims raised by Díaz-Ortiz are DISMISSED WITH PREJUDICE, and his state law claims are DISMISSED WITHOUT PREJUDICE accordingly.  Defendants' motion for summary judgment is GRANTED.  The Clerk to enter judgment.

        At San Juan, Puerto Rico, this 1st day of May, 2009.

                                    S/ JUSTO ARENAS
                            Chief United States Magistrate Judge